UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCOIS TABI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OFFICER MCCULLOUGH, et al.,<br><br>　　　　Defendants. | Case No. CV 17-1795 DMG(JC)<br><br>MEMORANDUM OPINION AND ORDER DISMISSING ACTION WITHOUT PREJUDICE |

## I.　BACKGROUND

On March 6, 2017, Plaintiff paid the filing fee and filed a complaint against multiple employees of the Los Angeles Department of Transportation ("LADOT") in their individual capacities: Officer McCullough, Officer Enriquez, J. Atkinson, T. Mayer, Kenneth Heinsuis, and four unnamed defendants (collectively "defendants"). [Doc. # 1.] On March 7, 2017, the assigned Magistrate Judge issued an Order Regarding Service of Process ("March Order") advising Plaintiff that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service of the summons and complaint must be accomplished on each defendant within 90 days after filing the complaint, *i.e.*, by June 5, 2017. [Doc. # 5.] The March Order directed Plaintiff to file separate proof of service forms for each defendant served within the 90-day period, and cautioned Plaintiff that his failure to effectuate proper service by June 5, 2017, might result in dismissal of the action without

prejudice as to any unserved defendant. [Doc. # 5 at 1.] The March Order also provided plaintiff with information about the Federal "Pro Se" Clinics that offer on-site information and guidance to individuals like plaintiff who are representing themselves in federal civil actions. [Doc. # 5 at 3.]

On June 2, 2017, Plaintiff filed the currently operative First Amended Complaint ("First Amended Complaint" or "FAC") against the same defendants, again in their individual capacities. [Doc. # 6.] On June 5, 2017, Plaintiff filed a "Proof of Service" for each of the named defendants which, in pertinent part, essentially represented that a process server had attempted service simply by delivering "summonses and the complaints" for the five named defendants to an individual at the LADOT main office (collectively "2017 Proofs of Service").[1] [Doc. ## 14-18.] On August 11, 2017, Plaintiff filed a Request for Entry of Default Judgment ("Request"), seeking the entry of a default judgment against each of the named defendants pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. [Doc. # 20.]

On September 12, 2017, the Magistrate Judge issued an Order ("September Order") denying the Request without prejudice because, as explained in detail therein, Plaintiff failed to demonstrate that he had properly effectuated service of process on any of the defendants in the manner required by the Federal Rules of

---

[1]Specifically, in each of the 2017 Proofs of Service a process server, "Coach Ron," attested that "[he was] denied access by security[,]" that "[a] lady by the name of Stacy [or Stacie] Starkey accepted the documentation on [June 5, 2017]," and that "[a] lady claiming to represent the dept of transportation accepted the documentation [or lawsuit]." (Docket Nos. 9-13). Likewise, in the Declaration of [plaintiff] in Support of Request for Entry of Default Judgment, plaintiff attested that on June 5, 2017, he went to the LADOT main office with Coach Ron who attempted to serve the complaint and summons on the defendants, but was denied access to the building by security officers. (Docket No. 21, ¶¶ 1-7). According to plaintiff, about 20 minutes later the process server delivered the "summonses and the complaints" for all five defendants to "a woman claiming to be a representative from the LADOT[]" (later identified as "Stacy Starkey"), and stated to the representative simply "It is a lawsuit. . . ." (Docket No. 21, ¶¶ 8-12).

2

Civil Procedure. [Doc. # 22.]² The September Order *sua sponte* extended the original Rule 4(m) service time limit from June 5, 2017 to October 13, 2017, effectively granting Plaintiff an additional 30 days to effect service of process upon each of the defendants and file proofs of service so reflecting ("First Extended Service Period"). [Doc. # 22 at 4.] The September Order cautioned Plaintiff again that his failure timely to effectuate proper service and to file proofs of service so demonstrating might result in dismissal of the action without prejudice as to any unserved defendant by reason of Plaintiff's failure to prosecute, unless Plaintiff could show good cause for further extending the time for service. [Doc. # 22 at 4.]

After the First Extended Service Period expired without further action by, or communication from Plaintiff, the Magistrate Judge, on November 22, 2017, issued an Order to Show Cause ("First OSC") directing Plaintiff, within seven days, to show cause, if there be any, why proper service was not timely made on any of the defendants and why the case should not be dismissed without prejudice for failure to effectuate service and for lack of prosecution. [Doc. # 23.] The First OSC cautioned Plaintiff that the failure timely to respond to the First OSC or to show cause, might result in the dismissal of the action without prejudice for failure to effectuate service and/or for lack of prosecution. [Doc. # 23 at 2.]
///

---

²More specifically, the September Order denied plaintiff's Request without prejudice because, among other things, plaintiff had not demonstrated that he had properly effectuated service of process on any of the defendants in the manner required by the Federal Rules of Civil Procedure, – *i.e.*, there was no admissible evidence that the LADOT "representative" who purportedly accepted copies of the summons and complaint – *i.e.*, "Stacy Starkey" – was either (1) an agent authorized by appointment or by law to receive service of process for defendants (federal method); or (2) "in charge" of any specific defendant's office or place of business (state method); and the proofs of service plaintiff filed did not state that copies of the summons and operative first amended complaint were also mailed by first-class mail, postage prepaid to the defendants, as required under the state method. (Docket No. 22 at 3).

3

On December 4, 2017, Plaintiff filed a response to the First OSC ("First Response") in which he essentially conceded that he had not effected proper service upon any of the defendants, made multiple unsworn and otherwise unsupported allegations as to why the defendants had not been properly and timely served, and sought ten additional weeks to effect service.[3] [Doc. # 24.]

On December 21, 2017, the Court issued a Memorandum Opinion and Order Dismissing Action without Prejudice Due to Lack of Proper Service ("First Dismissal Order") which adopted the March and September Orders and the First OSC and dismissed the action without prejudice because Plaintiff had not timely effected proper service on any defendant despite being afforded a significant extension of the 90-day service deadline, and Plaintiff had not shown good cause or any other plausible basis for the Court to exercise its discretion to afford plaintiff any more time to accomplish service. [Doc. # 25.] On December 22, 2017, judgment was entered accordingly, and the case was closed. [Doc. # 26.]

On January 19, 2018, plaintiff filed a post-judgment motion which essentially asked the Court for relief from the First Dismissal Order and additional time for service. [Doc. # 30.]

On August 28, 2018, the Court signed an Order ("August Order") which granted Plaintiff's post-judgment motion, vacated the First Dismissal Order and judgment, reopened the case, extended Plaintiff's deadline to effect service of process upon each of the defendants "one final time" to 60 days after the date of the August Order – *i.e.*, until Monday, October 29, 2018, ("Second Extended

---

[3]More specifically, plaintiff alleged that service had not been timely made upon the defendants because (i) "the [LADOT] hides behind a phalanx of security goons whose specific purpose is to prevent Service of Process"; (ii) process servers contacted by plaintiff refused to effect service because the "[LADOT] was apparently notorious for its policies and procedures relating to Service of Process"; (iii) "[t]he process server [plaintiff] paid to effect service was apparently deceived and misdirected by the [LADOT]"; and (4) defendants did not return plaintiff's request for voluntary waiver of service. (Docket No. 24 at 2).

4

Service Period"), and directed that "plaintiff must *properly* effect service of the operative First Amended Complaint and summons on each defendant and file proofs of service so reflecting by such deadline." [Doc. # 33 at 6 (emphasis original).][4] The August Order cautioned that the extension granted was the "final extension of time," and that absent good cause shown, Plaintiff's failure timely to effectuate proper service and to file proofs of service so demonstrating would result in dismissal of the action without prejudice as to any unserved defendant. [Doc. # 33 at 6.]

On October 29, 2018, Plaintiff filed Proofs of Service purportedly for several of the named defendants – McCullough, Enriquez, Heinsuis, and Mayer – and on November 1, 2018, Plaintiff filed a Proof of Service purportedly for another named defendant – Atkinson (collectively "2018 Proofs of Service"). (Docket Nos. 36-40). Aside from the names of defendants as to whom the process server indicates he received a summons, the 2018 Proofs of Service are materially identical. Each is signed on October 26, 2018, by the same process server who attests that he received the particular referenced defendant's summons on October 26, 2018 (a mere three days before the deadline for service set in the August Order). Next to unchecked boxes, the 2018 Proofs of Service all state: "I served the summons on *(name of individual)* Office of the City Clerk, Room 395, who is designated by law to accept service of process on behalf of *(name of organization)* Los Angeles Dept. of Transportation on *(date)* 10/26/2018[.]" [Doc. ## 36-40 at 2 (parentheticals and italics in original).]

On November 7, 2018, the Magistrate Judge issued a Second Order to Show Cause Re Service ("Second OSC") which advised Plaintiff that the 2018 Proofs of Service did not reflect that the summons and First Amended Complaint had been

---

[4]Notwithstanding its vacation of the First Dismissal Order, the August Order noted that the Court maintains its adoption of and agreement with the Magistrate Judge's March and September Orders and the First OSC. (Docket No. 33 at 6 n.1).

properly served on any specific defendant. [Doc. # 41.] More specifically, the Second OSC explained:

> Among other things, the [2018] Proofs of Service do not clearly reflect the method purportedly used for serving any of the defendants. Although the preprinted proof of service forms supplied several check boxes for indicating which of several possible service methods was used for a particular defendant, the process server left all of the boxes blank. The [2018] Proofs of Service also do not clearly reflect that plaintiff properly served any specific defendant named in the First Amended Complaint. To the extent plaintiff attempted to do so pursuant to Fed. R. Civ. P. 4(e)(2)(C) (delivery to agent authorized), there is no indication or evidence in the record which demonstrates that such service was at all valid. For instance, although the [2018] Proofs of Service suggest that summons were delivered to someone in the "Office of the City Clerk, Room 395" who was authorized to accept service on behalf of *the LADOT*, they do not identify *who* that person was, much less reflect that such person was an agent authorized by appointment or by law to receive service of process for any one of the *individual defendant*s, as opposed to the *organization* that was expressly listed in the [2018] Proofs of Service (*i.e.*, the LADOT).

[Doc. # 41 at 2-3 (emphasis original).] The Second OSC thus directed Plaintiff, within seven days, to show cause, if there be any, why proper service had not been timely made on any of the defendants and why the case should not be dismissed without prejudice for failure to effectuate service and for lack of prosecution. [Doc. # 41 at 3.] The Second OSC specifically cautioned Plaintiff that the failure timely to respond to the Second OSC or to show good cause, might result in the dismissal of the action without prejudice for failure to effectuate service and/or for

lack of prosecution.  [Doc. # 41 at 3.]  This Court agrees with and adopts the Second OSC and the findings therein.  See also supra note 4 (maintaining adoption of March and September Orders and First OSC).

On November 21, 2018 – weeks beyond the expiration of the October 29, 2018 extended deadline to effect service – Plaintiff filed another Proof of Service for Defendant Heinsuis ("Heinsuis Proof of Service") in which a process server (identified both as "IC McMilan and as "IC Milan") declared under penalty of perjury that he or she had served copies of the  "summons," "complaint," and "Exhibit[s] A-C" (which were not attached) on "Kenneth Heinsuis" at 6938 Costello Ave. Van Nuys, CA 91405" by "personal service[]" – specifically, the process server "personally delivered the documents listed to the party or person authorized to received service of process for the party" on October 31, 2018, at 3:00 p.m.  [Doc. # 43.]

On November 21, 2018, Plaintiff belatedly filed a request for extension of time to file a response to the Second OSC with an attachment entitled "Response to Order to Show Cause" and multiple exhibits which the Magistrate Judge subsequently deemed to be Plaintiff's timely response to the Second OSC ("Second Response").[5]  [Doc. ## 42, 44.]  In the Second Response, Plaintiff essentially contends that the "[d]efendants have all been served in the proper manner . . . [once several] circumstances [are] taken into consideration," specifically (1) "At all times relevant to this matter, when asked to do so, Defendants have consistently sought to evade responsibility for their misconduct by refusing to reveal their full names[]"; (2) "Defendants could not be served at their place of business because their place of business is unknown.  There is no

---

[5] In his declaration in support of his request for extension of time to file a response to the Second OSC, plaintiff attested that he had been unable to meet the seven day deadline set forth in the Second OSC essentially because "someone or some persons" had been "tampering with [plaintiff's] mail." (Docket No. 42 at 2).

7

evidence that any of these Defendants are still employed by the [LADOT]"; (3) "With the exception of Kenneth Heinsuis, Defendants are known only by their last names. That is why Defendants could not be served at their residences. Their full identities are unknown[]"; (4) in September and October 2018, Plaintiff was twice "instructed by risk management at LADOT that the Office of the City Clerk ["City Clerk"], Room 395, was designated by law to accept lawsuits against LADOT employees[]"; (5) Kenneth Heinsuis had been served twice – once "at the Office of the City Clerk" (apparently referring to the 2018 Proofs of Service), and once personally at his residence (apparently referring to the Heinsuis Proof of Service); (6) in an unrelated action filed by Plaintiff in the Central District of California entitled Francois Tabi v. Joseph Lazofsky, et al., Case No. 17-7189[6] ("Tabi v. Lazofsky"), "[t]he District Court did not refuse jurisdiction" even though Defendants "City of Los Angeles and its employees, Victor Fusano and Rita Kubela were successfully served a lawsuit and summons on December 28, 2017, at the Office of the City Clerk at 200 N. Spring Street, Room 395." [Doc. # 42 at 4-6.]

The Second Response alternatively seeks leave to file a Second Amended Complaint on the following basis:

> Because the overwhelming majority of the Defendants are basically unidentified, and because there is no evidence that any of these Defendants are still employed by the LADOT, Plaintiff needs to amend his lawsuit so he can add the [LADOT] as a Defendant. The LADOT can be easily served at the Office of the City Clerk, Room

---

[6]The Court takes judicial notice of undisputed facts reflected in the docket, filings, and other records in such action. See Fed. R. Civ. P. 201 (court may take judicial notice of fact "not subject to reasonable dispute"); Mir v. Little Company of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of matters of public record including court records in other actions).

8

|   |   |
|---|---|
| 1 | 395. The LADOT would then be compelled to reveal the full |
| 2 | identities of the other defendants, so that these defendants, if |
| 3 | necessary, may be served, either personally, or by publication, or by |
| 4 | any other methods permissible under the law. |

[Doc. # 42 at 6.] Plaintiff has offered no evidence or legal authority which reasonably supports his arguments in the Second Response.

## II. DISCUSSION

For the reasons discussed below, the Court exercises its discretion to dismiss this action without prejudice since Plaintiff has failed to effectuate timely and valid service upon any of the defendants or to show good cause for such failure despite being afforded more than adequate notice and opportunity to do so.

### A. Pertinent Law

A federal court may exercise personal jurisdiction over a defendant only after the defendant has been served in the manner required by Rule 4 of the Federal Rules of Civil Procedure. See Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987), superseded by rule on other grounds as explained in L.H. Carbide Corp. v. The Piece Maker Co., 852 F. Supp. 1425, 1430-31 (N.D. Ind. 1994); Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988) (citation omitted); Falco v. Nissan North America, Inc., 987 F. Supp. 2d 1071, 1074 (C.D. Cal. 2013) (citation omitted). A plaintiff who has paid the filing fee is generally responsible for obtaining an appropriate summons from the clerk, and for having the summons and appropriate version of the complaint timely and validly served on each defendant. See Fed. R. Civ. P. 4(b), (c)(1); see also Crowley v. Factor 5, Inc., 2014 WL 1868851, at *3 (N.D. Cal. May 7, 2014) ("Plaintiffs are responsible for diligently prosecuting their case, including taking reasonable steps to ensure that service is timely effectuated in compliance with Rule 4(m).") (citing Anderson v. Air West, Inc., 542 F.2d 522, 525 (9th Cir. 1976); Putnam v. Morris, 833 F.2d 903, 905 (10th

Cir. 1987)).

Pursuant to Rule 4(m), service of the summons and complaint must be accomplished on each named defendant within 90 days after the filing of the complaint. Fed. R. Civ. P. 4(m). A court may, *sua sponte* and after notice to the plaintiff, dismiss an action without prejudice whenever a plaintiff has failed properly to serve the defendants within the 90-day period provided in Rule 4(m). Fed. R. Civ. P. 4(m); see Crowley v. Bannister, 734 F.3d 967, 974-75 (9th Cir. 2013) (citations omitted). Nonetheless, Rule 4(m) requires a court to "extend the time for service for an appropriate period" when there is "good cause" for insufficient service on a defendant. Fed. R. Civ. P. 4(m); see also Efaw v. Williams, 473 F.3d 1038, 1040 (9th Cir. 2007) (citing Mann v. American Airlines, 324 F.3d 1088, 1090 n.2 (9th Cir. 2003)). When service is challenged, the plaintiff has the burden to demonstrate that a particular defendant was properly served, or show that there was good cause for any invalid service. See Fed.R.Civ.P. 4(c)(1); Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted); Wei v. State of Hawaii, 763 F.2d 370, 372 (9th Cir. 1985).

Whether there is "good cause" for a failure to comply with the Rule 4(m) time limit is determined on a case by case basis, and is present "only in limited circumstances." In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001) (citation omitted); see also George v. Professional Disposables International, Inc., 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) ("Good cause . . . is evidenced only in exceptional circumstances. . . ."). In general, good cause is shown in cases of excusable neglect, such as when (1) service was not completed within the 90-day period despite a good-faith attempt; (2) plaintiff was reasonably confused about the requirements of service; (3) defendant took affirmative steps to evade or frustrate service; and/or (4) "plaintiff was [otherwise] prevented from serving [particular] defendant[s] by factors beyond his control." See Wei, 763 F.2d at 372 (citations omitted); Chemehuevi Indian Tribe v. Wilson, 181 F.R.D. 438, 440 (N.D. Cal.

1998) (citation omitted); see also In re Sheehan, 253 F.3d at 512 ("At a minimum, 'good cause' means excusable neglect.") (citation omitted); Diamond v. United States, 2015 WL 11216682, at *2 (C.D. Cal. May 13, 2015) (good cause shown when there is evidence that "defendant took affirmative steps to evade or frustrate service") (citations omitted). In contrast, a plaintiff's inadvertence, mistake, or general "ignorance of governing rules" generally does not constitute good cause for untimely service. See In re Sheehan, 253 F.3d at 512; Wei, 763 F.2d at 372; Crowley v. Factor 5, Inc., 2014 WL 1868851, at *3; see also Systems Signs Supplies v. United States Department of Justice, Washington, D.C., 903 F.2d 1011, 1013 (5th Cir. 1990) (plaintiff's *pro se* status does not excuse "complete failure to properly effect service").

Even in the absence of good cause shown, courts still have broad discretion to either extend the service deadline (even after the Rule 4(m) service deadline has expired) or dismiss the action without prejudice as against the unserved defendants. Efaw, 473 F.3d at 1040-41 (citations omitted); In re Sheehan, 253 F.3d at 513 (citation omitted). Courts consider several factors when determining whether to grant a discretionary extension of the time for service, including "[any] statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service[.]" Efaw, 473 F.3d at 1041 (internal quotation marks and citation omitted).

The pertinent methods for serving the individual defendants in the instant case are set forth in Rule 4(e) of the Federal Rules of Civil Procedure. More specifically, as Plaintiff was previously informed in great detail, a federal court can assert personal jurisdiction over a defendant only if the defendant has been properly served by one of the methods described in Rule 4(e)(2) ("federal

///

///

method"),[7] or by a method set forth in state law (*i.e.*, pursuant to California Code of Civil Procedure ("CCP") Section 415.10 *et seq.*) ("state method").[8]  Fed. R. Civ. P. 4(e).

 **B.  Analysis**

Here, for the reasons discussed below, the Court exercises its discretion to dismiss the action without prejudice.  First, the record does not reflect that Plaintiff ever timely and validly served any of the defendants.  As explained in detail in the September Order and the Second OSC, and as Plaintiff somewhat appears to concede, neither the 2017 Proofs of Service nor the 2018 Proofs of Service reflect that copies of the summons and operative First Amended Complaint had necessarily been served on any of the defendants in a manner authorized by the Federal Rules of Civil Procedure.  (September Order at 2; Second OSC at 2; Second Response at 2).  Similarly, the Heinsuis Proof of Service reflects that any service was untimely (*i.e.*, made on October 31, 2018, when the Second Extended Service Period had already expired on October 29, 2018), and does not reflect that

---

[7] Under the federal method, service on an individual defendant may be made by (1) delivering a copy of the summons and complaint to the individual personally (*i.e.*, in person); (2) leaving copies of such documents "at the individual's dwelling house or usual place of abode with someone of suitable age and discretion who resides there"; or (3) delivering a copy of both documents "to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(A)-(C).

[8] Under the state method, acceptable methods for serving individuals include (1) personal service – *i.e.*, in person delivery to the defendant (CCP § 415.10); (2) substitute service – leaving a copy of the summons and complaint at the defendant's usual residence or place of business with a "competent member of the household" or a person "apparently in charge" of the defendant's office/place of business who is "informed of the contents thereof," and also mailing copies of the summons and complaint by first-class mail, postage prepaid to the defendant at such address (CCP §§ 415.20(b), 416.90); (3) service by mail – mailing to the defendant by first-class mail or airmail, postage prepaid a copy of the summons and complaint, together with two copies of the statutory "notice and acknowledgment," and "a return envelope, postage prepaid, addressed to the sender" (which service is effective only if an executed notice and acknowledgment form has been returned) (CCP § 415.30); and (4) service by publication if authorized by the Court (CCP § 415.50).

12

the *operative* First Amended Complaint was actually served (*i.e.*, describing documents served only as "summons," "complaint," and "Exhibit[s] A-C[,]" which were not attached). [Doc. # 43.]

In addition, contrary to his steadfast suggestion otherwise, plaintiff has not shown that he could ever properly obtain personal jurisdiction over defendant Heinsuis or any of the defendants in their *individual* capacities simply by serving someone at "the Office of the City Clerk." Plaintiff has identified no state statute, local ordinance, or other law which expressly authorizes the City Clerk to accept service of process for any LADOT employee in an individual capacity. [Doc. # 42 at 4-5.] Plaintiff's unsworn assertion that he had been instructed by an unidentified official with LADOT "risk management" that the City Clerk "was designated by law to accept lawsuits against LADOT employees[]" [Doc. # 42 at 5], even if true, does not establish that such authority actually exists. See, e.g., Collins v. Barber, 2011 WL 13217941, at *2 (C.D. Cal. Mar. 31, 2011) ("[A] purported agent's acceptance of service, or even his or her own statements concerning his or her authority, standing alone, do not establish such actual authority.") (citations omitted). Similarly, there is no evidence that any particular defendant actually appointed the City Clerk as his or her agent *for the specific purpose of receiving process*. See generally Collins, 2011 WL 13217941, at *2 ("To show proper service pursuant to Rule 4(e)(2)(C) upon an authorized appointed agent, Plaintiff must prove the existence of an actual appointment for the specific purpose of receiving process.") (citing cases); Nyholm v. Pryce, 259 F.R.D. 101, 104 (D. N.J. 2009) (plaintiff has burden to prove existence of "agency relationship" between defendant and individual who purportedly accepted service as defendant's authorized appointed agent) (citation omitted); cf., e.g., Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987) (service on authorized agent at veterans administration medical center sufficient to serve medical center supervisors in their official capacities but not in their individual capacities).

Second, plaintiff has not shown good cause for failing properly to serve the defendants. For example, plaintiff's conclusory assertion that "[d]efendants" (as an indistinguishable group) "have consistently sought to evade responsibility for their misconduct by refusing to reveal their full names[]" (Second Response at 2) does not show that any specific defendant took affirmative steps to avoid being served, or otherwise engaged in specific conduct meant to frustrate Plaintiff's good-faith attempts at service. Cf., e.g., Tucker v. Thomas, 853 F. Supp. 2d 576, 588 (N.D. W. Va. 2012) (fact that defendant lived in gated community and plaintiffs' belief that defendant had been evading service insufficient to show good cause to extend time for service especially where Court had already granted a 90-day extension of time to serve defendant). Similarly, Plaintiff does not show good cause based on conclusory assertions that he did not have sufficient identifying information about the defendants (*e.g.*, first names, place of employment). (Second Response at 2). It was Plaintiff's sole responsibility to take reasonable steps to identify, locate, and serve each of the defendants. See Fed. R. Civ. P. 4(b), (c)(1); Crowley v. Factor 5, Inc., 2014 WL 1868851, at *3 (citations omitted). Here, Plaintiff points to nothing in the record which plausibly suggests that he took any steps that reasonably satisfied this burden. In addition, records of the proceedings in Tabi v. Lazofsky (Second Response at 3-4), do not plausibly suggest that Plaintiff and/or Defendants *here* took any actions which might constitute good cause for failure to effect timely and valid service of process in *this* case. Indeed, court records do not reflect that service was ever at issue in the unrelated action.

Moreover, Plaintiff's pursuit of his case over the last two years has been far from diligent. See, e.g., Noll v. Street Surfing, LLC, 2009 WL 10675492, at *1 (C.D. Cal. Sept. 14, 2009) (Rule 4(m) "good cause" exception inapplicable where plaintiff makes "half-hearted" attempts at timely service) (citing United States v. Kenner General Contractors, Inc., 764 F.2d 707, 710-11 (9th Cir. 1985),

superseded by rule as stated in In re Sheehan, 253 F.3d at 512).  For instance, the record suggests that Plaintiff made only a few, last-minute attempts at effecting service on any defendant.  The 2017 Proofs of Service reflect that Plaintiff did not provide copies of the summons and complaint to his process server until June 5, 2017 – the *very last day* of the initial 90-day service period provided by Rule 4(m).  [Doc. ## 5, 15-18.]  The 2018 Proofs of Service reflect that Plaintiff did not deliver summonses to his process server until three days before the Second Extended Service Period ended.  [Doc. ## 36-40.]  Plaintiff does not say that he made any other timely, but unsuccessful attempts to serve the defendants or otherwise provide any reasonable justification for not attending to service more vigorously during the significant amount of time made available for him to do so.  Consistently, during the First Extended Service Period, Plaintiff apparently made no attempt at all to serve the defendants.  Nor did Plaintiff request an extension of time until almost two months after the First Extended Service Period had already expired (and apparently only when prompted by the First OSC).  See, e.g., Noll, 2009 WL 10675492, at *2 (plaintiff's failure to request extension of service deadline after discovering process server had not timely effectuated service on defendant "is evidence of a lack of diligence on plaintiff's part").

Third, Plaintiff does not argue, and the Court does not find, that any of the traditional factors – statute of limitations bar, prejudice to the defendant, actual notice of the lawsuit, and eventual service – support granting yet another discretionary extension of the Rule 4(m) time limit.  Here, any potential statute of limitations bar actually weighs against granting Plaintiff more time.  To the extent Plaintiff's claims might end up being time-barred if they are dismissed without prejudice and re-filed in a new action, that dilemma appears to have been caused by factors entirely *within* Plaintiff's own control.  For instance, absent tolling, the two-year statute of limitations for some of Plaintiff's claims (*i.e.*, those predicated on alleged misconduct on October 28, 2014 and February 3, 2015 (see, e.g., FAC

15

¶¶ 12, 25)), could readily have expired shortly before or around March 6, 2017, when Plaintiff commenced the instant action. See generally Action Apartment Association, Inc. v. Santa Monica Rent Control Board, 509 F.3d 1020, 1026-27 (9th Cir. 2007) ("well-established" that two-year limitations period applies to Section 1983 claims brought in California) (citing Cal. Civ. Proc. Code § 335.1). Nonetheless, Plaintiff inexplicably failed to attempt service with the degree of urgency that might be expected where, like here, the lawsuit was commenced in such close proximity to the running of the statute of limitations. Cf., e.g., Crowley v. Factor 5, Inc., 2014 WL 1868851, at *4 n.12 ("By commencing the instant action shortly before the running of the [applicable] statute of limitations, Plaintiffs assumed the risk that the dismissal of their claims under Rule 4(m) would effectively bar them from refiling their claims.") (citing Tuke v. United States, 76 F.3d 155, 156 (7th Cir. 1996) (warning that "[a]n attorney who files suit when the statute of limitations is about to expire must take special care to achieve timely service of process, because a slip-up is fatal")).

In addition, granting another discretionary extension of time for service would presumptively prejudice the individual defendants. See generally Moore v. Telfon Communications Corp., 589 F.2d 959, 967-68 (9th Cir. 1978) ("prejudice is presumed from unreasonable delay"). While the events giving rise to this action occurred over four years ago, and the action itself has been pending for over two years, Plaintiff points to no evidence which plausibly suggests that any of the named defendants has received actual notice of Plaintiff's claims against them before the limitations period had expired. See, e.g., Zapata v. City of New York, 502 F.3d 192, 198 (2d Cir. 2007) ("It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, especially if the defendant had no actual notice of the existence of the complaint until the service period had expired[.]"), cert. denied, 552 U.S. 1243 (2008). Plaintiff also has not rebutted the presumption that the individual

defendants would be prejudiced if plaintiff were granted a third extension of time to effect service. See generally Anderson, 542 F.2d at 524 (presumption of prejudice from unreasonable delay can be rebutted by a showing that no actual prejudice occurred).

Finally, evidence that Plaintiff may have eventually (albeit untimely) served Defendant Heinsuis, at most only marginally weighs in favor of granting another discretionary extension, and is far outweighed by the other evidence discussed above. Again, not only has Plaintiff already been afforded a significant amount of time for service, but he was also informed that he could obtain advice about his case from the Federal "Pro Se" Clinics, was provided a detailed description of the acceptable service methods that could be used in the case, and was repeatedly cautioned that the case could be dismissed in precisely the type of circumstances present here. See, e.g., Anderson, 542 F.2d at 524 (well established that "failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant"). Where, like here, a plaintiff is apparently unwilling to prosecute his case with any reasonable diligence, granting another discretionary extension of the time would undermine the core purposes served by Rule 4(m) and statutes of limitation. See, e.g., Wei, 763 F.2d at 372 ("[Rule 4 service time limit] is intended to force parties . . . to be diligent in prosecuting their causes of action.") (citations omitted); Anderson, 542 F.2d at 525 ("Once the statute has run, a potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim. If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims.") (citation omitted).

To the extent Plaintiff alternatively requests leave to file a Second Amended Complaint in order to add the LADOT as a defendant (Second Response at 4-5), such request is denied. First, Plaintiff's desire to amend his complaint does not

show good cause for his failure properly to serve any of the defendants. Cf. Wei, 763 F.2d at 372 (plaintiff's desire to amend his complaint before effecting service does not constitute good cause for lack of service); Bryant v. Brooklyn Barbeque Corp., 130 F.R.D. 665, 668 (W.D. Mo. 1990) (plaintiff's desire to amend complaint before effecting service not good cause for failure timely to serve defendants after filing original complaint) (citing id.), aff'd 932 F.2d 697 (8th Cir.), cert. denied, 502 U.S. 1005 (1991). Second, Plaintiff did not attach a proposed Second Amended Complaint as required by local rules. See Local Rule 15-1 ("Any proposed amended pleading must be filed as an attachment to the related motion. . . ."). Leave to amend may be denied without prejudice based solely upon the failure to comply with Local Rule 15-1. Third, even so, Plaintiff does not contend that the LADOT itself caused any constitutional violation, and thus fails to show that amendment would not be futile. See generally Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("liberality in granting leave to amend [] subject to several limitations" including "futility") (internal quotation marks and citation omitted); Erickson v. Boston Scientific Corp., 846 F. Supp. 2d 1085, 1090 (C.D. Cal. 2011) ("A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency . . . or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies.") (citing Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010), cert. denied, 565 U.S. 816 (2011); Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003)). Plaintiff's apparent desire to add the LADOT as a defendant at this late juncture simply to facilitate locating the defendants Plaintiff actually wants to sue (Second Response at 4) is not a valid ground for granting leave to amend. Cf. Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 686 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

## III. CONCLUSION

In light of the foregoing, (1) Plaintiff's request for leave to amend is DENIED; and (2) this action is dismissed without prejudice.

IT IS SO ORDERED.

DATED: August 22, 2019

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE